UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| KELLY SCHULTZ, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THEMLSONLINE.COM, INC., a Missouri company<br><br>Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Kelly Schultz ("Plaintiff Schultz" or "Schultz") brings this Class Action Complaint and Demand for Jury Trial against Defendant TheMLSonline.com, Inc. ("Defendant MLSonline" or "MLSonline") to stop the Defendant from violating the Telephone Consumer Protection Act by sending text messages *without consent* to consumers who registered their phone numbers on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Schultz, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Kelly Schultz is a resident of Zimmerman, Minnesota.

2. Defendant MLSonline is a Minnesota registered corporation headquartered in Champlin, Minnesota. Defendant MLSonline conducts business throughout this District.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant does business in this District, and the wrongful conduct giving rise to this case was directed from this District to Plaintiff in this District.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

7. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

8. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12. According to online robocall tracking service "YouMail," 3.3 billion robocalls were placed in June 2020 alone, at a rate of 111.2 million per day. www.robocallindex.com (last visited July 28, 2020).

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

16. MLSonline operates a real estate brokerage in Minnesota that enables consumers to purchase and sell properties for a cost.

17. As part of its business practice, MLSonline employees are instructed by MLSOnline to place solicitation calls and send solicitation text messages to consumers to drum up business.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

18. Unfortunately, these calls and texts are being sent without express written consent to consumers who are registered on the DNC and who do not have an existing business relationship with Defendant.

19. For example, in Plaintiff Schultz's case, Defendant sent multiple unsolicited text messages to her number registered on the DNC even though Schultz has never given Defendant consent to call her.

20. In response to these text messages, Plaintiff Schultz files this lawsuit seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Class and costs.

**DEFENDANT MLSONLINE IS RESPONSIBLE FOR THE CONDUCT AND UNLAWFUL TELEMARKETING PRACTICES OF ITS REALTORS**

21. MLSonline provides training to all of its employees, providing them with access to real estate mastermind groups, business development classes, one-on-one coaching, and lead system and conversion training.

Our training includes:
- ✓ Next Level Mastermind Groups
- ✓ Business Development Classes
- ✓ One-on-one Coaching
- ✓ Accountability Groups
- ✓ Training on social and digital media marketing
- ✓ <u>Lead system and conversion training</u>[3]

22. MLSonline states in its job postings for Inside Sales Service Agents that it requires salespeople with exceptional phone skills who aren't afraid to speak to anyone, as

---

[3] https://www.themlsonline.com/minnesota-real-estate/join

MLSonline teaches its employees what to say to generate business over the phone thereby controlling their message and conduct.

### Inside Sales Service Agent

TheMLSonline.com, Inc.   Minneapolis, Minnesota

- Are you looking for 'the next big thing?
- Well, this is it!
- Are you wanting a chance to earn significant income WITH stability?
- RECEIVE A SALARY (plus overtime, bonus and commission) in real estate while serving as an Inside Sales/Service Agent!
- This role involves leadership, management, a great eye for detail, a strong commitment to systems, and a friendly/personable demeanor on the phone.
- The Inside Sales/Service Agent (ISA) serves as a hybrid of roles.
- Must possess exceptional phone skills and be unafraid to talk to anyone (we'll teach you the things to say and the questions to ask).
- Must be extremely detail-oriented and dedicated to systems.
- Must be willing to have accountability conversations on a regular basis.
- Must be hyper-focused on meeting and exceeding goals through conversations with potential clients.
- Must have a desire for a big life.
- We're not interested in someone who just likes houses and people.
- We're interested in someone who loves making connections and doesn't want the audacious night/weekend schedule that pulls you out of your home.
- A great ISA has thicker skin- a superb eye for detail- and is passionate about making an impact on their world.    [4]

23.     Defendant's job application for an "Inside Sales Service Agent" also explicitly states that "This involves numerous phone calls, emails, and text messages daily."[5]

24.     MLSonline has regular accountability conversations with its sales staff who are required to exceed goals through conversations with potential clients.[6]

25.     MLSonline also provides its employees with consumer leads for them to call.

---

[4] https://jobsearcher.com/j/inside-sales-service-agent-at-themlsonlinecom-inc-in-minneapolis-minnesota-Z4ODnL
[5] *Id.*
[6] *Id.*

> **Real Leads. Real Clients.**
>
> To truly ignite your real estate career, quality leads are essential. At TheMLSonline, we provide quality, active home buyer and home seller leads. We use an advanced lead distribution system, powered by our popular consumer website.
>
> - Powerful lead distribution system to your smartphone
> - Multiple lead-types available seven days a week
> - Lead conversion tools and training
> - Unparalleled lead insight and intelligence tools
> - Take leads leads throughout the entire Twin Cities [7]

26. In fact, each MLSonline employee is given at least 20 leads per month.[8]

27. Defendant's "Sales Operations Leader" publicizes on his Linkedin profile that his "Sales duties include sphere-group prospecting, ***cold calling***."[9]

28. Upon information and belief, Plaintiff Schultz was contacted by a MLSonline employee to determine if she was looking to purchase or sell a property.

29. When the phone number Plaintiff was texted from is called 612-712-5682, an employee from Team Realty TheMLSonline answers the call.

30. Other have also complained about unsolicited text messages from Defendant. Two months ago a man named Jeff posted online with the title: "MLSonline team realty from Emma Holmes?"

*I received a text message from that number 612-261-1560, stating that "we had spoke a little while ago and I had a little interest in possibly moving". That is not true. I tried to call the number back, but it went to voice mail. IT is either a telemarketer or a more likely a scam.*[10]

## PLAINTIFF SCHULTZ'S ALLEGATIONS

31. Plaintiff Schultz registered her phone number on the DNC on March 25, 2017.

---

[7] https://www.themlsonline.com/minnesota-real-estate/join
[8] *Id.*
[9] https://www.linkedin.com/in/mnsvp/
[10] https://www.whoisthatnumber.com/phonenumber/612-261-1560

32. Plaintiff Schultz's phone number is not associated with a business and is used for personal use only.

33. On September 10, 2020 at 9:44 AM, Plaintiff Schultz received 2 unsolicited text messages from Defendant using phone number 612-712-5682:



34. On September 13, 2020 at 5:28 PM, Plaintiff received a third unsolicited text message from Defendant, again using phone number 612-712-5682:



35. On September 16, 2020 at 9:14 AM, Plaintiff received a fourth unsolicited text message from Defendant, again using phone number 612-712-5682:



36. On September 18, 2020 at 9:10 AM, Plaintiff received a fifth unsolicited text message from Defendant, again using phone number 612-712-5682:



37. Plaintiff does not have a business relationship with MLSonline and has never provided her phone number or consent to be called to MLSonline.

38. The unauthorized solicitation text messages that Plaintiff received from MLSonline, as alleged herein, have harmed Plaintiff Schultz in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

39. Seeking redress for these injuries, Plaintiff Schultz, on behalf of herself and a Class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited telemarketing text messages to telephone numbers that are registered on the DNC.

## CLASS ALLEGATIONS

40. Plaintiff Schultz brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of the Defendant) called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claim they supposedly obtained prior express written consent to call Plaintiff, or (b) they did not obtain prior express written consent.

41. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Schultz anticipates the need to amend the Class definitions following appropriate discovery.

42.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

43.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant MLSonline systematically sent multiple text messages to Plaintiff and other consumers whose telephone numbers were registered with the DNC without first obtaining consent to send the texts;

(b) whether Defendant MLSonline's texts to Plaintiff and other consumers were sent for telemarketing purposes;

(c) whether Defendant's conduct constitutes a violation of the TCPA;

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

44.     **Adequate Representation**: Plaintiff Schultz will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Schultz has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff Schultz and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Schultz nor her counsel have any interest adverse to the Class.

45.     **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff Schultz.

Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the Do Not Registry Class)

46. Plaintiff Schultz repeats and realleges paragraphs 1 through 45 of this Complaint and incorporates them by reference.

47. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

48. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

49. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

50. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call

Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

51. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

52. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Schultz individually and on behalf of the Class, prays for the following relief:

53. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Schultz as the representative of the Class; and appointing her attorneys as Class Counsel;

54. An award of actual and/or statutory damages and costs;

55. An order declaring that Defendant's actions, as set out above, violate the TCPA;

56. An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

57. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Schultz requests a jury trial.

DATED this 14th day of October, 2020.

<u>By: /s/ Ryan Peterson</u>

Ryan Peterson
Peterson Legal, PLLC
5201 Eden Avenue, Suite 300
Edina, MN 55436
Telephone: (612) 367-6568
Facsimile: (612) 295-0415

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*

*\*Pro Hac Vice motion forthcoming*